JUDGE KEENAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,            :        INDICTMENT

        -v.-                         :        

ROBERT EGAN and                      :
BERNARD MCGARRY,

        Defendants.                  :

- - - - - - - - - - - - - - - -x

**10 CRIM 191**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 0 MAR 2010

### COUNT ONE

**(Conspiracy to Commit Bank Fraud and Wire Fraud)**

The Grand Jury charges:

Relevant Persons and Entities

1.   At all times relevant to this Indictment, ROBERT
EGAN, the defendant, was the President and owner of Mount Vernon
Money Center Corporation ("MVMC"), a New York company.  MVMC was
headquartered in Mount Vernon, New York, and had additional
offices located in Elmsford, New York, New Jersey, and
Connecticut.

2.   At various times relevant to this Indictment,
MVMC, through a number of operating entities, engaged in various
cash management businesses, including, among others:
(1) replenishing cash in Automated Teller Machines ("ATMs") owned
by third parties such as banks and other entities (referred to
herein as the "ATM Replenishment Business"); (2) providing
traditional armored transportation services (referred to herein
as the "Armored Transportation Business"); (3) providing onsite

payroll services for companies and entities seeking to provide immediate availability of cash to employees in exchange for their paychecks (referred to herein as the "Payroll Business"); and (4) providing check cashing services through various check cashing stores located in New York, New York, New Jersey and Connecticut.   In connection with these businesses, MVMC owned and operated several cash vaults, in which MVMC and its affiliated operations stored and processed cash collected from, and distributed to, customers and cash depositories such as the Federal Reserve.

          3.   At all times relevant to this Indictment, BERNARD MCGARRY, the defendant, was the Chief Operating Officer of MVMC and all of its related businesses, and exercised control over MVMC's bank accounts and cash vaults.

          4.   At all times relevant to this Indictment, U.S. Bank National Association ("U.S. Bank"), Bank of America, Webster Bank, Wilmington Savings Fund Society, and New York Community Bancorp, Inc. (together with its subsidiary, New York Community Bank, "NYCB"), the deposits of which were then insured by the Federal Insurance Corporation, were "financial institutions" within the meaning of Title 18, United State Code, Section 20.

          5.   At all times relevant to this Indictment, Actors Federal Credit Union ("Actors") and ADP Federal Credit Union ("ADP"), the accounts of which were then insured by the National

Credit Union Share Insurance Fund, were "financial institutions" within the meaning of Title 18, United State Code, Section 20.

**BACKGROUND**

The ATM Replenishment Business

6.   At various times relevant to this Indictment, MVMC, through its ATM Replenishment Business, replenished thousands of ATMs owned by third parties, and as of February 2010, specifically replenished over 5,300 ATMs.  ATM owners provided cash directly to MVMC, or arranged for cash to be provided to MVMC by another entity such as a bank.  MVMC represented that it would only use the funds of the ATM owner or bank (referred to herein as the "ATM customer") to fill that ATM customer's ATMs.  MVMC received tens of millions of dollars a week from its ATM customers for the purpose of replenishing their ATMs.

7.   MVMC typically received the funds it used to fill the ATMs either through a wire transfer to a bank account controlled by MVMC, and/or by picking up cash from a cash provider designated by the ATM customer, such as the Federal Reserve.  After MVMC picked up the cash from the cash provider, MVMC took the cash to one of its cash vaults, where the cash was loaded into canisters or bags to be delivered to each of the ATMs (referred to as the "loads"), on a rotating basis.  MVMC personnel then transported the canisters or bags of cash to the

3

ATMs, and either inserted the canisters into the ATMs or filled the ATMs with additional cash.

8.    After the cannisters had been inserted into the ATMs and the existing cannisters had been removed, MVMC employees transported the removed cannisters back to MVMC's vault, where the cash was counted.   The cash that was in the cannisters returned to the vault was referred to as "residual cash."   In some cases, MVMC's contractual arrangements required residual cash to be returned to the customer after it was processed by MVMC; in other cases, the residual cash was to be utilized to fund that customer's subsequent ATM replenishment needs.

<u>The Armored Transportation Business</u>

9.    From at least in or about 2007, up to and including in or about February 2010, MVMC, through an entity called "Armored Money Services" (referred to herein as "AMS"), provided armored transportation services to various customers, including banks, money remitting services and retailers (referred to herein as the "AMS customers").   AMS collected millions of dollars of cash every day from AMS customers located in New York, New Jersey, and Connecticut.   The cash was delivered to one of MVMC's vaults, typically in the evening.   With respect to most of the cash delivered to the MVMC vaults, vault personnel counted the cash overnight, and reported the totals to the customer.   The next morning, MVMC employees generally combined the AMS

customers' cash for the purpose of delivering the cash to the
Federal Reserve, or to a bank or other cash depository, where the
customers' funds would then be credited to one or more bank
accounts controlled by ROBERT EGAN and BERNARD MCGARRY, the
defendants.   Thereafter, MCGARRY controlled the timing of the
wiring of the funds to the AMS customers.

### The Payroll Business

10.   MVMC also provided onsite payroll services to
various employers, including hospitals and universities.  As part
of this business, employers (referred to herein as "Payroll
customers") wired money to a bank account controlled by ROBERT
EGAN and BERNARD MCGARRY, the defendants.  Subsequently, MVMC
employees made cash available to the Payroll customers'
employees, typically on the premises of the Payroll customers, in
exchange for the employees' paychecks.

### THE SCHEME TO DEFRAUD

11.   As set forth more fully below, from at least in or
about 2005 up to and including in or about February 2010, ROBERT
EGAN and BERNARD MCGARRY, the defendants, and others known and
unknown, solicited and collected hundreds of millions of dollars
from MVMC's customers, including financial institutions, money
transmitting companies, retailers, hospitals and universities, on
false representations that they would safeguard the funds
entrusted to them, and that they would not commingle customers'

funds or use the funds for purposes other than those specified in the various contractual relationships between MVMC and its various customers.   In truth and in fact, EGAN and MCGARRY misappropriated their customers' money and used it to fund tens of millions of dollars of operating losses in MVMC's businesses and to enrich themselves at their customers' expense.

12.   As a further part of the fraudulent scheme, ROBERT EGAN and BERNARD MCGARRY, the defendants, engaged in a practice known as "playing the float."   Specifically, MVMC was entrusted on a weekly basis to hold tens of millions of dollars for its customers for stated business purposes for a certain period of time.   Relying upon the continual influx of funds, EGAN and MCGARRY misappropriated the customers' funds for their own use, either to cover operating expenses of one or more of the MVMC operating entities, or to repay prior obligations to MVMC's customers, frequently as a result of earlier misappropriations, or for their own personal enrichment.

13.   As a further part of the fraudulent scheme, ROBERT EGAN and BERNARD MCGARRY, the defendants, commingled customer funds in MVMC's vaults.   MVMC's contracts with its customers in the ATM Replenishment Business generally required MVMC to keep each customer's cash separate or segregated from the cash owned by any other party.   However, at various times relevant to this Indictment, and in violation of these express contractual

6

obligations, MVMC failed to keep its customers' money segregated. Instead, when cash arrived in the vault from sources such as the Federal Reserve or some other designated cash provider, vault personnel, acting at the direction of ROBERT EGAN and BERNARD MCGARRY, the defendants, took that cash and, without regard to ownership or source, filled whatever cannisters or bags needed to be filled in order to replenish the ATMs scheduled to be filled the next day.

14.   As a further part of the fraudulent scheme, and contrary to MVMC's contractual obligations, after residual cash was processed by MVMC employees, the residual cash was typically not kept segregated for each customer; rather the residual cash was commingled with other customers' residual cash.  Even in the few instances where residual cash was kept in segregated trays or bins, if vault personnel had insufficient cash to fill the next day's ATM loads for a customer or customers, as result of the execution of the defendants' scheme to defraud their customers, the vault personnel took the residual cash that was in another customer's tray or bin in order to fill the next day's ATM loads.

15.   In addition, in furtherance of the scheme to defraud, and at the direction of BERNARD MCGARRY, the defendant, MVMC employees diverted ATM customers' cash in the vault to the Payroll Business, so as to make cash available to MVMC's Payroll customers.

16.  In furtherance of the scheme to defraud, MVMC employees, acting with the knowledge and approval of ROBERT EGAN and BERNARD MCGARRY, the defendants, distributed daily and weekly reports via email to ATM customers purporting to represent the amount of cash MVMC held in MVMC's vaults on behalf of each customer.  These reports, called "vault inventory" reports, falsely represented to each customer that its funds were segregated in MVMC's vaults.  In addition, the cumulative total cash balances represented on the vault inventory reports for all of MVMC's ATM customers falsely inflated the amount of the actual cash held in MVMC's vaults by tens of millions of dollars.

17.  As a further part of the fraudulent scheme, BERNARD MCGARRY, the defendant, acting with the knowledge and approval of ROBERT EGAN, the defendant, directed the flow of funds between and among MVMC's various business bank accounts on a daily basis.  MCGARRY approved all outgoing wire activity from MVMC's bank accounts, and directed the transfer of funds between MVMC's various businesses to cover daily operational needs and the repayment of outstanding customer obligations.

18.  As a result of the commingling and misappropriation of customer funds described above, in or about early February 2010, MVMC owed between approximately $70 million and $75 million to ATM, AMS and Payroll customers.  However, at that time, MVMC had only between approximately $20 million and

$25 million of cash in its vaults and bank accounts available to repay these customers.

      19.  In addition to funding MVMC's business operations with customer funds, ROBERT EGAN, the defendant, caused MVMC to loan millions of dollars from MVMC's companies to enrich himself at MVMC's customers' expense.

**STATUTORY ALLEGATION**

      20.  From at least in or about 2005 up to and including in or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 1343 and 1344 of Title 18, United States Code.

      21.  It was a part and an object of the conspiracy that ROBERT EGAN and BERNARD MCGARRY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing

9

such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

22.   It was further a part and an object of the conspiracy that ROBERT EGAN and BERNARD MCGARRY, the defendants, and others known and unknown, unlawfully, willfully, and knowingly, would and did execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

<u>Means And Methods Of The Conspiracy</u>

23.   Among the means and methods by which ROBERT EGAN and BERNARD MCGARRY, the defendants, and their co-conspirators would and did carry out the conspiracy were the following:

a.   EGAN signed contracts with owners of ATMs, including banks and other entities, to replenish ATMs, promising, among other things, to segregate customer money used for such replenishment in MVMC's vaults.

b.   Despite these promises, EGAN and MCGARRY caused funds held by MVMC in its vaults on behalf of ATM customers to be commingled.

      c.    EGAN and MCGARRY "played the float," relying on new customer monies to replenish old funds which they had misappropriated.

      d.    EGAN and MCGARRY directed and approved the improper use of customer funds to cover shortfalls in operations and to enrich themselves at their customers' expense.

### Overt Acts

24. In furtherance of the conspiracy and to effect the illegal objects thereof, ROBERT EGAN and BERNARD MCGARRY, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

      a.    On or about November 6, 2008, EGAN signed a contract with U.S. Bank promising to keep U.S. Bank's cash in its vault separate from other customers' cash.

      b.    On or about March 31, 2009, MCGARRY sent an email to an MVMC employee located in Mount Vernon, New York, directing the employee to deposit Webster Bank's funds several days after they were available to be returned to Webster Bank.

      (Title 18, United States Code, Section 1349.)

## COUNT TWO

### (Bank Fraud re: Webster Bank)

The Grand Jury further charges:

25.   The allegations set forth in paragraphs 1 through 19, 23 and 24 of this Indictment are re-alleged as if set forth herein in full.

26.   In or about January 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, Webster Bank, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated millions of dollars in cash entrusted to MVMC by Webster Bank, and, among other things, falsely represented to Webster Bank that MVMC had either returned to Webster Bank, or held as segregated funds on its behalf, a total of over $12 million.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT THREE

### (Bank Fraud re: U.S. Bank)

The Grand Jury further charges:

27.   The allegations set forth in paragraphs 1 through 19, 23 and 24 of this Indictment are re-alleged as if set forth herein in full.

28.   In or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, U.S. Bank, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated millions of dollars in cash entrusted to MVMC by U.S. Bank, and, among other things, falsely represented to U.S. Bank that MVMC either held as segregated funds on U.S. Bank's behalf, or had replenished ATMs with U.S. Bank's cash, a total of over $13 million.

(Title 18, United States Code, Sections 1344 and 2.)

13

## COUNT FOUR

**(Bank Fraud re: Bank of America)**

The Grand Jury further charges:

29.   The allegations set forth in paragraphs 1 through 19, 23 and 24 of this Indictment are re-alleged as if set forth herein in full.

30.   In or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, Bank of America, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated millions of dollars in cash entrusted to MVMC by Bank of America, and, among other things, falsely represented to Bank of America that MVMC either held as segregated funds on Bank of America's behalf, or had replenished ATMs with Bank of America's cash, a total of over $13 million.

(Title 18, United States Code, Sections 1344 and 2.)

14

## COUNT FIVE

**(Bank Fraud re: New York Community Bancorp. Inc.)**

The Grand Jury further charges:

31.  The allegations set forth in paragraphs 1 through 19, 23 and 24 of this Indictment are re-alleged as if set forth herein in full.

32.  In or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, NYCB, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated millions of dollars in cash entrusted to MVMC by NYCB, and, among other things, falsely represented to NYCB that MVMC either held as segregated funds on NYCB's behalf, or had replenished ATMs with NYCB's cash, a total of over $4 million.

(Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX

### (Bank Fraud re: Actors Federal Credit Union)

33.   The allegations set forth in paragraphs 1 through 19, 23 and 24 of this Indictment are re-alleged as if set forth herein in full.

34.   In or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the accounts of which were then insured by the National Credit Union Share Insurance Fund, to wit, Actors, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated millions of dollars in cash entrusted to MVMC by Actors, and, among other things, falsely represented to Actors that MVMC either held as segregated funds on Actors' behalf, or had replenished ATMs with Actors' cash, a total of approximately $4 million.

(Title 18, United States Code, Sections 1344 and 2.)

16

## COUNT SEVEN

### (Bank Fraud re: ADP Federal Credit Union)

35.   The allegations set forth in paragraphs 1 through 19, 23 and 24  of this Indictment are re-alleged as if set forth herein in full.

36.   In or about February 2010, in the Southern District of New York and elsewhere, ROBERT EGAN and BERNARD MCGARRY, the defendants, unlawfully, willfully, and knowingly, did execute, and attempt to execute, a scheme and artifice to defraud a financial institution, the accounts of which were then insured by the National Credit Union Share Insurance Fund, to wit, ADP, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations and promises, to wit, the defendants fraudulently misappropriated hundreds of thousands of dollars in cash entrusted to MVMC by ADP, and, among other things, falsely represented to ADP that MVMC either held as segregated funds on ADP's behalf, or had replenished ATMs with ADP's cash, a total of approximately $228,000.

(Title 18, United States Code, Sections 1344 and 2.)

### FORFEITURE ALLEGATION

37.   As a result of committing one or more of the offenses alleged in Counts One through Seven of this Indictment,

ROBERT EGAN and BERNARD MCGARRY, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982, any property constituting or derived from proceeds obtained directly or indirectly as a result of the offenses alleged in Counts One through Seven of the Indictment, including but not limited to at least $75,000,000 in United States currency, in that such sum in aggregate is property representing the approximate amount of proceeds obtained as a result of the bank fraud and wire fraud offenses, for which the defendants are jointly and severally liable.

### SUBSTITUTE ASSET PROVISION

38.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any

other property of the defendants up to the value of the above
forfeitable property.

     (Title 18, United States Code, Section 28.)


_____
FOREPERSON

_____
PREET BHARARA
United States Attorney     JsK

19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

ROBERT EGAN, and
BERNARD MCGARRY

Defendants.

## INDICTMENT

10 Cr. ____

(18 U.S.C. §§ 1349, 1344, and 2.)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____
Foreperson.

*March 10, 2010*
*Indictment filed. W/w's issued for Robert Egan*
*and Bernard McGarry. Case assigned to Judge Keenan.*
*Freeman, USMJ*